1  Fred W. Schwinn (SBN 225575)
   CONSUMER LAW CENTER, INC.
2  12 South First Street, Suite 1014
   San Jose, California 95113-2418   E-filing
3  Telephone Number: (408) 294-6100
   Facsimile Number: (408) 294-6190
4  Email Address: fred.schwinn@sjconsumerlaw.com

5  Attorney for Plaintiff
   MAN WA AMENNUNO
6                                    ADR

7
8
9
                    IN THE UNITED STATES DISTRICT COURT
                 FOR THE NORTHERN DISTRICT OF CALIFORNIA
                         SAN FRANCISCO DIVISION

10 MAN WA AMENNUNO,                    Case No.: CV 10- 01971   EMC

11              Plaintiff,            COMPLAINT

12      v.                           DEMAND FOR JURY TRIAL

13 GLASSBERG, POLLAK & ASSOCIATES, a
   business entity of unknown type; HAROLD B.   15 United States Code § 1692 et seq.
14 GLASSBERG, individually and in his official   California Civil Code § 1788 et seq.
   capacity; HAROLD B. AUERBACH,
15 individually and in his official capacity; and
   DENIS KLAVDIANOS, individually and in
16 his official capacity; MONARCH
   INOVENTURE CAPITAL, LLC, a Virginia
17 limited liability company,

18
                      Defendants.
19

20      Plaintiff, MAN WA AMENNUNO (hereinafter "Plaintiff"), based on information and belief and

21 investigation of counsel, except for those allegations which pertain to the named Plaintiff or her

22 attorneys (which are alleged on personal knowledge), hereby makes the following allegations:

23
                              I. INTRODUCTION
24

25      1.    This is an action for actual damages, statutory damages, attorney fees and costs

26 brought by an individual consumer for Defendants' violations of the Fair Debt Collection Practices Act,

27 15 U.S.C. § 1692 et seq. (hereinafter "FDCPA") and the Rosenthal Fair Debt Collection Practices Act,

28 California Civil Code § 1788 et seq. (hereinafter "RFDCPA") which prohibit debt collectors from

                                    - 1 -
                                  COMPLAINT

1  engaging in abusive, deceptive and unfair practices.

2      2.   According to 15 U.S.C. § 1692:

3          a.   There is abundant evidence of the use of abusive, deceptive, and unfair debt

4  collection practices by many debt collectors. Abusive debt collection practices contribute to the

5

6  number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of

7  individual privacy.

8          b.   Existing laws and procedures for redressing these injuries are inadequate to

9  protect consumers.

10

11         c.   Means other than misrepresentation or other abusive debt collection

12  practices are available for the effective collection of debts.

13         d.   Abusive debt collection practices are carried on to a substantial extent in

14  interstate commerce and through means and instrumentalities of such commerce. Even where

15  abusive debt collection practices are purely intrastate in character, they nevertheless directly

16  affect interstate commerce.

17

18         e.   It is the purpose of this title to eliminate abusive debt collection practices by

19  debt collectors, to insure that those debt collectors who refrain from using abusive debt

20  collection practices are not competitively disadvantaged, and to promote consistent State action

21  to protect consumers against debt collection abuses.

22                          **II. JURISDICTION**

23

24      3.   Jurisdiction of this Court arises under 15 U.S.C. § 1692k(d), 28 U.S.C. § 1337, and

25  supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. § 1367. Declaratory

26  relief is available pursuant to 28 U.S.C. §§ 2201 and 2202.

27      4.   This action arises out of Defendant's violations of the Fair Debt Collection

28

- 2 -
COMPLAINT

1 Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA").

2

## III. VENUE

3
4
5     5.    Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(b), in that a
substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

6 Venue is also proper in this judicial district pursuant to 15 U.S.C. § 1692k(d), in that Defendants

7 transact business in this judicial district and the violations of the FDCPA complained of occurred in this

8 judicial district.

9

## IV. INTRADISTRICT ASSIGNMENT

10
11     6.    This lawsuit should be assigned to the San Francisco Division of this Court because
a substantial part of the events or omissions which gave rise to this lawsuit occurred in San Francisco

12
13 County.

14

## V. PARTIES

15     7.    Plaintiff, MAN WA AMENNUNO (hereinafter "Plaintiff"), is a natural person

16
17 residing in San Francisco County, California. Plaintiff is a "consumer" within the meaning of 15

18 U.S.C. § 1692a(3) and a "debtor" within the meaning of Cal. Civil Code § 1788.2(h). At all relevant

19 times, Plaintiff has resided in San Francisco County, California.

20     8.    Defendant, GLASSBERG, POLLAK & ASSOCIATES (hereinafter "GPA"), is a

21 business entity of unknown type engaged in the business of collecting debts in this state with its

22
23 principal place of business located at: 425 California Street, Suite 850, San Francisco, California

24 94104-1293. GPA may be served as follows: Glassberg, Pollak & Associates, c/o Harold B.

25 Glassberg, Partner, 425 California Street, Suite 850, San Francisco, California 94104-1293. The

26 principal business of GPA is the collection of debts using the mails and telephone, and GPA regularly

27 attempts to collect debts alleged to be due another. GPA is a "debt collector" within the meaning of 15

28

- 3 -

COMPLAINT

U.S.C. § 1692a(6).

9.    Defendant, HAROLD B. GLASSBERG (hereinafter "GLASSBERG"), is a natural person and licensed attorney in the state of California. GLASSBERG may be served at his current business address at: Harold B. Glassberg, Glassberg, Pollak & Associates, 425 California Street, Suite 850, San Francisco, California 94104-1293. GLASSBERG is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6).

10.    Defendant, HAROLD B. AUERBACH (hereinafter "AUERBACH"), is a natural person and licensed attorney in the state of California. AUERBACH may be served at his current business address at: Harold B. Auerbach, Glassberg, Pollak & Associates, 425 California Street, Suite 850, San Francisco, California 94104-1293. AUERBACH is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6).

11.    Defendant, DENIS KLAVDIANOS (hereinafter "KLAVDIANOS"), is a natural person and licensed attorney in the state of California. KLAVDIANOS may be served at his current business address at: Denis Klavdianos, Glassberg, Pollak & Associates, 425 California Street, Suite 850, San Francisco, California 94104-1293. KLAVDIANOS is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6).

12.    Defendant, MONARCH INOVENTURE CAPITAL, LLC (hereinafter "MONARCH"), is a Virginia limited liability company engaged in the business of collecting debts in this state with its principal place of business located at: 12726 Glenkirk Road, Richmond, Virginia 23233-2251. MONARCH may be served as follows: Monarch InoVenture Capital, LLC, c/o Russell R. Johnson, III, Registered Agent, 2258 Wheatlands Drive, Manakin-Sabot, Virginia 23103-2168. The principal business of MONARCH is the collection of debts using the mails and telephone, and MONARCH regularly attempts to collect debts alleged to be due another. MONARCH is a "debt

1 | collector" within the meaning of 15 U.S.C. § 1692a(6) and Cal. Civil Code § 1788.2(c).

2 |     13.    At all times herein mentioned, each of the Defendants was an officer, director,

3 | agent, servant, employee and/or joint venturer of his co-defendants, and each of them, and at all said

4 |
5 | times, each Defendant was acting in the full course and scope of said office, directorship, agency,

6 | service, employment and/or joint venture. Any reference hereafter to "Defendants" without further

7 | qualification is meant by Plaintiffs to refer to each Defendant, and all of them, named above.

8 | ## VI. FACTUAL ALLEGATIONS

9 |     14.    Between November 12, 2006, and November 26, 2006, Plaintiff incurred 11

10 | separate financial obligations, namely 11 personal checks issued by Plaintiff to Thunder Valley Casino,
11 |
12 | a d/b/a of the United Auburn Indian Community in California (hereinafter "the debt"). The debt was

13 | incurred primarily for personal, family or household purposes and is therefore a "debt" as that term is

14 | defined by 15 U.S.C. § 1692a(5) and a "consumer debt" as that term is defined by Cal. Civil Code §

15 | 1788.2(f).

16 |     15.    Plaintiff issued the subject checks to Thunder Valley Casino as evidence of her
17 |
18 | gambling debt.

19 |     16.    Sometime thereafter, on a date unknown to Plaintiff, photocopies of the

20 | dishonored checks were placed with Defendants for collection from Plaintiff.

21 |     17.    At no time did Defendants actually have physical possession of the subject checks

22 | nor were the checks endorsed to Defendants. See, Cal. Comm. Code § 3203; *In re Hwang*, 396 B.R.
23 |
24 | 757, 763 (Bankr. C.D. Cal. 2008).

25 |     18.    On or about June 24, 2009, Defendants filed a lawsuit against Plaintiff in the

26 | Superior Court of California, County of San Francisco, entitled *Monarch InoVenture Capital, LLC v.*

27 | *Amennuno Manwa, a/k/a Manwa S. Amennuno, et al.*, Case No. CGC-09-489771 (hereinafter the

28 |

1  "*Monarch v. Amennuno* complaint"), which sought to collect, *inter alia*, \$30,000.00 and pre-judgment

2  "interest on said amount at the rate of ten percent (10%) per annum from November 21, 2006."

3          19.     A true and accurate copy of the *Monarch v. Amennuno* complaint is attached

4
5  hereto, marked Exhibit "1," and by this reference is incorporated herein.

6          20.     The *Monarch v. Amennuno* complaint (Exhibit "1") is titled <u>Complaint for Money</u>

7  <u>Due for Goods Sold and Delivered and/or Services Rendered</u>.

8          21.     The *Monarch v. Amennuno* complaint (Exhibit "1") stated as follows:

9          Within four (4) years last past, and prior to the commencement of this action,
10         Defendants, and each of them, became indebted to Plaintiff in the sum of \$30,000.00
           [sic] goods sold and delivered and/or services rendered to Defendants, and each of them,
11         by Plaintiff at the request of Defendants, and each of them.

12         22.     Plaintiff is informed and believes, and thereon alleges, that the *Monarch v.*

13  *Amennuno* complaint (Exhibit "1") contained materially false and misleading representations which
14
15  were intended to deceive the Superior Court of California and Plaintiff.

16         23.     Plaintiff is informed and believes, and thereon alleges, that the *Monarch v.*

17  *Amennuno* complaint (Exhibit "1") misrepresented the character, amount and legal status of the debt.

18         24.     The *Monarch v. Amennuno* complaint (Exhibit "1") bears the signature of
19  Defendant, GLASSBERG.
20
21         25.     The *Monarch v. Amennuno* complaint (Exhibit "1") represented or implied that

22  Plaintiff's account had been reviewed by GLASSBERG.

23         26.     Plaintiff is informed and believes, and thereon alleges, that GLASSBERG did not

24  conduct a professional review of Plaintiff's account before signing and filing the *Monarch v.*

25  *Amennuno* complaint (Exhibit "1") and sending it to Plaintiff.  *See Clomon v. Jackson*, 988 F.2d 1314
26
27  (2nd Cir. 1993) and *Avila v. Rubin*, 84 F.3d 222, 228-29 (7th Cir. 1996).

28         27.     Plaintiff is informed and believes, and thereon alleges, that the *Monarch v.*

1   *Amennuno* complaint (Exhibit "1") misrepresented the role and involvement of legal counsel.

2         28.   Plaintiff is informed and believes, and thereon alleges, that the *Monarch v.*

3 *Amennuno* complaint (Exhibit "1") misrepresented the true source or nature of the communication,

4 thereby making false statements in an attempt to collect a debt.

5

6         29.   On or about June 29, 2009, Defendants filed a document titled First Amended

7 Complaint for Money Due on Dishonored Checks and for Statutory Damages in the *Monarch v.*

8 *Amennuno* case.

9         30.   A true and accurate copy of the document titled First Amended Complaint for

10 Money Due on Dishonored Checks and for Statutory Damages, without attachments, that was filed by

11 Defendants in the *Monarch v. Amennuno* case is attached hereto, marked Exhibit "2," and by this

12

13 reference is incorporated herein.

14         31.   The First Amended Complaint for Money Due on Dishonored Checks and for

15 Statutory Damages that was filed by Defendants in the *Monarch v. Amennuno* case (Exhibit "2") stated,

16 *inter alia*, as follows:

17

18         Prior to commencement of this action, Plaintiff's Assignor, GLOBAL PAYMENT
        CHECK SERVICES, INC., assigned, transferred and set over to Plaintiff the hereinafter

19         alleged claim against Defendants, and Plaintiff ever since has been, and now is, the
        holder and owner thereof.

20

21         32.   The First Amended Complaint for Money Due on Dishonored Checks and for

22 Statutory Damages that was filed by Defendants in the *Monarch v. Amennuno* case (Exhibit "2") stated,

23 *inter alia*, as follows:

24         Pursuant to the provisions of Civil Code Sec. 1719, Plaintiff is entitled to recover

25         additional damages of $1,500.00 per check, totaling $16,500.00 for the eleven unpaid
        checks.

26

27         33.   Plaintiff is informed and believes, and thereon alleges, that the First Amended

28 Complaint for Money Due on Dishonored Checks and for Statutory Damages that was filed by

Defendants in the *Monarch v. Amennuno* case (Exhibit "2") misrepresented that the debt was sold, transferred or otherwise assigned to Defendants for the purposes of collection.

34. Plaintiff is informed and believes, and thereon alleges, that the First Amended Complaint for Money Due on Dishonored Checks and for Statutory Damages that was filed by Defendants in the *Monarch v. Amennuno* case (Exhibit "2") was an attempt to collect the debt from Plaintiff, an action that could not lawfully be taken.

35. Plaintiff is informed and believes, and thereon alleges, that the First Amended Complaint for Money Due on Dishonored Checks and for Statutory Damages that was filed by Defendants in the *Monarch v. Amennuno* case (Exhibit "2") misrepresented the character, amount and legal status of the debt.

36. Plaintiff is informed and believes, and thereon alleges, that the First Amended Complaint for Money Due on Dishonored Checks and for Statutory Damages that was filed by Defendants in the *Monarch v. Amennuno* case (Exhibit "2") attempted to collect interest, fees or other charges from Plaintiff that were not expressly authorized by the agreement creating the debt or otherwise permitted by law. See *Imperial Merchant Services, Inc. v. Hunt*, 47 Cal. 4th 381, 397-98 (Cal. 2009).

37. Plaintiff is informed and believes, and thereon alleges, that the First Amended Complaint for Money Due on Dishonored Checks and for Statutory Damages that was filed by Defendants in the *Monarch v. Amennuno* case (Exhibit "2") misrepresented the compensation which may be lawfully received by Defendants for the collection of the debt.

38. The First Amended Complaint for Money Due on Dishonored Checks and for Statutory Damages that was filed by Defendants in the *Monarch v. Amennuno* case (Exhibit "2") bears the signature of Defendant, AUERBACH.

- 8 -
COMPLAINT

1    39.    On or about March 16, 2010, Defendants filed a document titled <u>Plaintiff's Post</u>

2  <u>Trial Brief</u> in the *Monarch v. Amennuno* case.

3    40.    A true and accurate copy of the document titled <u>Plaintiff's Post Trial Brief</u> that

4  was filed by Defendants in the *Monarch v. Amennuno* case is attached hereto, marked Exhibit "3," and

5

6  by this reference is incorporated herein.

7    41.    The <u>Plaintiff's Post Trial Brief</u> that was filed by Defendants in the *Monarch v.*

8  *Amennuno* case (Exhibit "3") misrepresented that the debt was sold, transferred or otherwise assigned

9  to Defendants for the purposes of collection.

10

11    42.    Plaintiff is informed and believes, and thereon alleges, that the <u>Plaintiff's Post</u>

12  <u>Trial Brief</u> that was filed by Defendants in the *Monarch v. Amennuno* case (Exhibit "3") was an attempt

13  to collect the debt from Plaintiff, an action that could not lawfully be taken.

14    43.    Plaintiff is informed and believes, and thereon alleges, that the <u>Plaintiff's Post</u>

15  <u>Trial Brief</u> that was filed by Defendants in the *Monarch v. Amennuno* case (Exhibit "3") misrepresented

16  the character, amount and legal status of the debt.

17

18    44.    Plaintiff is informed and believes, and thereon alleges, that the <u>Plaintiff's Post</u>

19  <u>Trial Brief</u> that was filed by Defendants in the *Monarch v. Amennuno* case (Exhibit "3") attempted to

20  collect interest, fees or other charges from Plaintiff that were not expressly authorized by the agreement

21  creating the debt or otherwise permitted by law.  See *Imperial Merchant Services, Inc. v. Hunt*, 47 Cal.

22  4th 381, 397-98 (Cal. 2009).

23

24    45.    Plaintiff is informed and believes, and thereon alleges, that the <u>Plaintiff's Post</u>

25  <u>Trial Brief</u> that was filed by Defendants in the *Monarch v. Amennuno* case (Exhibit "3") misrepresented

26  the compensation which may be lawfully received by Defendants for the collection of the debt.

27    46.    The <u>Plaintiff's Post Trial Brief</u> that was filed by Defendants in the *Monarch v.*

28

1 | *Amennuno* case (Exhibit "3") bears the signature of Defendant, KLAVDIANOS.

2 |     47.    On April 8, 2010, the Superior Court of California, County of San Francisco, the

3 | Honorable Marla J. Miller presiding, entered a <u>Statement of Decision Following Trial to the Court and</u>

4 | <u>Judgment</u> in the *Monarch v. Amennuno* case. A true and accurate copy of the <u>Statement of Decision</u>

5 | <u>Following Trial to the Court and Judgment</u> in the *Monarch v. Amennuno* case is attached hereto,

6 | marked Exhibit "4," and by this reference is incorporated herein.

7 |

8 |     48.    In the <u>Statement of Decision Following Trial to the Court and Judgment</u>, the court

9 | held that, "the debt is unenforceable. . . . [a]s . . . it represents a gambling debt incurred at a casino for

10 | the purpose of providing the [Plaintiff] with funds with which to gamble at the casino."

11 |

12 |     49.    After being served with the *Monarch v. Amennuno* complaint (Exhibit "1"),

13 | Plaintiff retained legal counsel, thereby incurring actual pecuniary damages.

14 | ## VII. CLAIMS

15 | ### FAIR DEBT COLLECTION PRACTICES ACT
16 | ### (All Defendants)

17 |     50.    Plaintiff brings the first claim for relief against all Defendants under the Federal

18 | Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*

19 |     51.    Plaintiff repeats, realleges, and incorporates by reference all preceding paragraphs

20 |

21 | as though fully set forth herein.

22 |     52.    Plaintiff is a "consumer" as that term is defined by the FDCPA, 15 U.S.C. §

23 | 1692a(3).

24 |     53.    Defendant, GPA, is a "debt collector" as that term is defined by the FDCPA, 15

25 | U.S.C. § 1692a(6).

26 |

27 |     54.    Defendant, GLASSBERG, is a "debt collector" as that term is defined by the

28 | FDCPA, 15 U.S.C. § 1692a(6).

55. Defendant, AUERBACH, is a "debt collector" as that term is defined by the FDCPA, 15 U.S.C. § 1692a(6).

56. Defendant, KLAVDIANOS, is a "debt collector" as that term is defined by the FDCPA, 15 U.S.C. § 1692a(6).

57. Defendant, MONARCH, is a "debt collector" as that term is defined by the FDCPA, 15 U.S.C. § 1692a(6).

58. The financial obligation originally owed to Thunder Valley Casino by Plaintiff is a "debt" as that term is defined by the FDCPA, 15 U.S.C. § 1692a(5).

59. Defendants have violated the FDCPA. The violations include, but are not limited to, the following:

a. Defendants made and used false, deceptive and misleading representations in an attempt to collect the debt, in violation of 15 U.S.C. §§ 1692e and 1692e(10);

b. Defendants misrepresented the character, amount or legal status of the debt, in violation of 15 U.S.C. § 1692e(2)(A);

c. Defendants misrepresented the compensation which may be lawfully received by Defendants for the collection of the debt, in violation of 15 U.S.C. § 1692e(2)(B);

d. Defendants falsely represented or implied that attorney GLASSBERG had reviewed Plaintiff's account when GLASSBERG had not done so, in violation of 15 U.S.C. §§ 1692e(3) and 1692e(10);

e. Defendants falsely represented the role and involvement of legal counsel, in violation of 15 U.S.C. §§ 1692e(3) and 1692e(10);

f. Defendants misrepresented the true source or nature of the communication, in violation of 15 U.S.C. §§ 1692e, 1692e(3) and 1692e(10);

g. Defendant attempted to obtain a California judgment against Plaintiff to collect a gambling debt, an action that cannot lawfully be taken, in violation of 15 U.S.C. §§ 1692e, 1692e(5) and 1692e(10);

h. Defendants misrepresented that MONARCH was lawfully entitled to collect the debt from Plaintiff, in violation of 15 U.S.C. §§ 1692e, 1692e(5) and 1692e(10);

i. Defendants attempted or threatened to collect treble damages from Plaintiff pursuant to Cal. Civil Code § 1719, an action that cannot legally be taken, in violation of 15 U.S.C. §1692e(5);

j. Defendants attempted or threatened to collect interest in addition to treble damages pursuant to Cal. Civil Code § 1719, an action that cannot legally be taken, in violation of 15 U.S.C. § 1692e(5);

k. Defendants attempted or threatened to collect attorney fees from Plaintiff, an action that cannot legally be taken, in violation of 15 U.S.C. § 1692e(5);

l. Defendants falsely represented that Defendants were lawfully entitled to collect interest in addition to treble damages pursuant to Cal. Civil Code § 1719, in violation of 15 U.S.C. §§ 1692e and 1692e(10);

m. Defendants falsely represented that Defendants were lawfully entitled to collect attorney's fees, in violation of 15 U.S.C. §§ 1692e and 1692e(10);

n. Defendants falsely represented that Defendants were lawfully entitled to collect treble damages from Plaintiff pursuant to Cal. Civil Code § 1719, in violation of 15 U.S.C. §§ 1692e and 1692e(10);

o. Defendants used false representations or deceptive means to collect or attempt to collect a debt, in violation of 15 U.S.C. §§ 1692e and 1692e(10); and

1               p.     Defendants attempted or threatened to collect interest, fees or other charges

from Plaintiff that are not expressly authorized by the agreement creating the debt or otherwise

permitted by law, in violation of 15 U.S.C. § 1692f(1).

60.     Defendants' acts as described above were done intentionally with the purpose of coercing Plaintiff to pay the debt.

61.     As a result of Defendants' violations of the FDCPA, Plaintiff is entitled to an award of actual damages, statutory damages, costs and reasonable attorneys fees, pursuant to 15 U.S.C. § 1692k.

<h3 style="text-align:center">ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT<br>(Against Defendant, MONARCH)</h3>

62.     Plaintiff brings the second claim for relief against Defendant, MONARCH, only under the Rosenthal Fair Debt Collection Practices ("RFDCPA"), California Civil Code §§ 1788-1788.33.

63.     Plaintiff repeats, realleges, and incorporates by reference the foregoing paragraphs.

64.     Plaintiff is a "debtor" as that term is defined by the RFDCPA, Cal. Civil Code § 1788.2(h).

65.     Defendant, MONARCH, is a "debt collector" as that term is defined by the RFDCPA, Cal. Civil Code § 1788.2(c).

66.     The financial obligation originally owed to Thunder Valley Casino by Plaintiff is a "consumer debt" as that term is defined by the RFDCPA, Cal. Civil Code § 1788.2(f).

67.     Defendant has violated the RFDCPA. The violations include, but are not limited to, the following:

               a.     Defendant made and used false, deceptive and misleading representations in

1    an attempt to collect the debt, in violation of Cal. Civil Code § 1788.17;[1]

2        b.    Defendant misrepresented the character, amount or legal status of the debt,

3    in violation of Cal. Civil Code §§ 1788.13(e) and 1788.17;[2]

4
5        c.    Defendant misrepresented the compensation which may be lawfully

6    received by Defendant for the collection of the debt, in violation of Cal. Civil Code §§

7    1788.13(e) and 1788.17;[3]

8        d.    Defendant falsely represented or implied that attorney GLASSBERG had

9    reviewed Plaintiff's account when GLASSBERG had not done so, in violation of Cal. Civil

10   Code §§ 1788.13(i), 1788.16 and 1788.17;[4]

11
12       e.    Defendant falsely represented the role and involvement of legal counsel, in

13   violation of Cal. Civil Code §§ 1788.13(i), 1788.16 and 1788.17;[5]

14       f.    Defendant misrepresented the true source or nature of the communication, in

15   violation of Cal. Civil Code §§ 1788.13(i), 1788.16 and 1788.17;[6]

16
17       g.    Defendant attempted to obtain a California judgment against Plaintiff to

18   collect a gambling debt, an action that cannot lawfully be taken, in violation of Cal. Civil Code

19   § 1788.17;[7]

20       h.    Defendant misrepresented that MONARCH was lawfully entitled to collect

21   the debt from Plaintiff, in violation of Cal. Civil Code §§ 1788.13(l) and 1788.17;[8]

22
         i.    Defendant attempted or threatened to collect treble damages from Plaintiff
23
     pursuant to Cal. Civil Code § 1719, an action that cannot legally be taken, in violation of Cal.
24

25   [1] 15 U.S.C. §§ 1692e and 1692e(10).
     [2] 15 U.S.C. § 1692e(2)(A).
26   [3] 15 U.S.C. § 1692e(2)(B).
     [4] 15 U.S.C. §§ 1692e(3) and 1692e(10).
27   [5] 15 U.S.C. §§ 1692e(3) and 1692e(10).
     [6] 15 U.S.C. §§ 1692e, 1692e(3) and 1692e(10).
28   [7] 15 U.S.C. §§ 1692e, 1692e(5) and 1692e(10).
     [8] 15 U.S.C. §§ 1692e, 1692e(5) and 1692e(10).

- 14 -
COMPLAINT

Civil Code §§ 1788.13(e) and 1788.17;[9]

      j.    Defendant attempted or threatened to collect interest in addition to treble damages pursuant to Cal. Civil Code § 1719, an action that cannot legally be taken, in violation of Cal. Civil Code §§ 1788.13(e) and 1788.17;[10]

      k.    Defendant attempted or threatened to collect attorney fees from Plaintiff, an action that cannot legally be taken or that was not intended to be taken, in violation of Cal. Civil Code §§ 1788.13(e) and 1788.17;[11]

      l.    Defendant falsely represented that Defendants were lawfully entitled to collect interest in addition to treble damages pursuant to Cal. Civil Code § 1719, in violation of Cal. Civil Code §§ 1788.13(e) and 1788.17;[12]

      m.    Defendant falsely represented that Defendants were lawfully entitled to attorney's fees, in violation of Cal. Civil Code §§ 1788.13(e) and 1788.17;[13]

      n.    Defendant falsely represented that Defendant was entitled to collect treble damages from Plaintiff pursuant to Cal. Civil Code § 1719, in violation of Cal. Civil Code §§ 1788.13(e) and 1788.17;[14]

      o.    Defendant used false representations or deceptive means to collect or attempt to collect a debt, in violation of Cal. Civil Code § 1788.17;[15] and

      p.    Defendant attempted or threatened to collect interest, fees or other charges from Plaintiff that are not expressly authorized by the agreement creating the debt or otherwise permitted by law, in violation of Cal. Civil Code §§ 1788.13(e) and 1788.17.[16]

[9] 15 U.S.C. §1692e(5).
[10] 15 U.S.C. § 1692e(5).
[11] 15 U.S.C. § 1692e(5).
[12] 15 U.S.C. §§ 1692e and 1692e(10).
[13] 15 U.S.C. §§ 1692e and 1692e(10).
[14] 15 U.S.C. §§ 1692e and 1692e(10).
[15] 15 U.S.C. §§ 1692e and 1692e(10).
[16] 15 U.S.C. § 1692f(1).

1    68.    Defendant's acts as described above were done willfully and knowingly with the

2    purpose of coercing Plaintiff to pay the debt, within the meaning of Cal. Civil Code § 1788.30(b).

3    69.    As a result of Defendant's violations of the RFDCPA, Plaintiff is entitled to an

4
5    award of her actual damages in an amount to be determined at trial, pursuant to Cal. Civil Code §

6    1788.30(a).

7    70.    As a result of Defendant's willful and knowing violations of the RFDCPA,

8    Plaintiff is entitled to an award of a statutory penalty against each defendant in an amount not less than

9    one hundred dollars ($100) nor greater than one thousand dollars ($1,000), pursuant to Cal. Civil Code

10   § 1788.30(b).

11
12   71.    As a result of Defendant's violations of the RFDCPA, Plaintiff is entitled to an

13   award of statutory damages against each Defendant in an amount not to exceed $1,000, pursuant to Cal.

14   Civil Code § 1788.17.[17]

15   72.    As a result of Defendant's violations of the RFDCPA, Plaintiff is entitled to an

16
17   award of her reasonable attorney's fees and costs pursuant to Cal. Civil Code §§ 1788.30(c) and

18   1788.17.[18]

19   73.    Pursuant to Cal. Civil Code § 1788.32, the remedies provided under the RFDCPA

20   are intended to be cumulative and in addition to any other procedures, rights or remedies that the

21   Plaintiff may have under any other provision of law.

22                              **VIII.  REQUEST FOR RELIEF**

23
24   Plaintiff requests that this Court:

25   a.    Assume jurisdiction in this proceeding;

26   b.    Declare that Defendants violated the Fair Debt Collection Practices Act, 15

27
28   [17] 15 U.S.C.§ 1692k(a)(2)(A).
     [18] 15 U.S.C.§ 1692k(a)(3).

U.S.C. §§ 1692e, 1692e(2)(A), 1692e(2)(B), 1692e(3), 1692e(5), 1692e(10) and 1692f(1);

c. Declare that Defendant, MONARCH, violated the Rosenthal Fair Debt Collection Practices Act, Cal. Civil Code §§ 1788.13(e), 1788.13(f), 1788.13(l) and 1788.17;

d. Award Plaintiff actual damages pursuant to 15 U.S.C. § 1692k(a)(1) and Cal. Civil Code §§ 1788.30(a) and 1788.17;

e. Award Plaintiff statutory damages in an amount not to exceed $1,000, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

f. Award Plaintiff a statutory penalty against Defendant, MONARCH, in an amount not less than $100 nor greater than $1,000, pursuant to Cal. Civil Code § 1788.30(b);

g. Award Plaintiff statutory damages against Defendant, MONARCH, in an amount not exceeding $1,000 pursuant to Cal. Civil Code § 1788.17;[19]

h. Award Plaintiff the costs of this action and reasonable attorneys fees pursuant to 15 U.S.C. § 1692k(a)(3) and Cal. Civil Code §§ 1788.30(c) and 1788.17;[20] and

i. Award Plaintiff such other and further relief as may be just and proper.

CONSUMER LAW CENTER, INC.

By: /s/ Fred W. Schwinn
Fred W. Schwinn (SBN 225575)
CONSUMER LAW CENTER, INC.
12 South First Street, Suite 1014
San Jose, California 95113-2418
Telephone Number: (408) 294-6100
Facsimile Number: (408) 294-6190
Email Address: fred.schwinn@sjconsumerlaw.com

Attorneys for Plaintiff
MAN WA AMENNUNO

---

[19] 15 U.S.C. § 1692k(a)(2)(A).
[20] 15 U.S.C. § 1692k(a)(3).

1

## CERTIFICATION PURSUANT TO CIVIL L.R. 3-16

2

Pursuant to Civil L.R. 3-16, the undersigned certifies that as of this date, other than the named

3

parties, there is no such interest to report.

4

/s/ Fred W. Schwinn

5

Fred W. Schwinn, Esq.

6

7

## DEMAND FOR JURY TRIAL

8

PLEASE TAKE NOTICE that Plaintiff, MAN WA AMENNUNO, hereby demands a trial by

9

jury of all triable issues of fact in the above-captioned case.

10

/s/ Fred W. Schwinn

11

Fred W. Schwinn, Esq.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 18 -
COMPLAINT

**SUMMONS ISSUED**

1   HAROLD B. GLASSBERG, State Bar Number 55669
    GLASSBERG, POLLAK & ASSOCIATES
2   425 California Street, Suite 850
    San Francisco, CA 94104-2193
3   (415) 291-8320
    (415) 291-8111 fax
4   gpa@glassberg-pollak.com

**F I L E D**
San Francisco County Superior Court

JUN 2 4 2009

GORDON PARK-LI, Clerk
BY: _____
          Deputy Clerk

CASE MANAGEMENT CONFERENCE SET

5   **Attorneys for Plaintiff**

6                        NOV 2 5 2009 - 9 AM

7                   DEPARTMENT 212

8      **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9          **COUNTY OF SAN FRANCISCO**

10         **UNLIMITED CIVIL JURISDICTION**

11   MONARCH INOVENTURE CAPITAL, LLC,  )  CASE NO.: **CGC-09-489771**
     a limited liability company,         )
12                            )
                                )  **COMPLAINT FOR MONEY DUE FOR**
13           **Plaintiff,**      )  **GOODS SOLD AND DELIVERED**
                                )  **AND/OR SERVICES RENDERED**
14         **vs.**             )
                                )
15                            )  **($30,000.00)**
     AMENNUNO MANWA; and DOES 1     )
16   through 50, inclusive,          )
                                )
17         **Defendants,**      )

18

19                **FIRST CAUSE OF ACTION**
            **(Money due against all defendants)**
20

21    **1.** That Defendants, DOE 1 through DOE 50, inclusive, are unknown to

Plaintiff, who therefore sues said Defendants by such fictitious names, and
22
Plaintiff will amend this Complaint to show their true names and capacities
23
when the same have been ascertained.
24
    **2.** The obligation sued upon herein was incurred within the jurisdiction of
25
the above-entitled Court.
26
    **3.** At all times herein mentioned, Plaintiff was and is a limited liability
27
company authorized to transact business in the State of California and/or to
28

**EXHIBIT**

**1**

1  transact business in interstate commerce.

2  4. The claim of indebtedness sued upon herein is not subject to the

3  provisions of Section 1812.10 and Section 2984.4 of the Civil Code for the

4  reason that said indebtedness did not arise from a retail installment contract

5  or under a contract pertaining to the purchase and/or financing of a motor

6  vehicle.

7  5. Within four (4) years last past, and prior to the commencement of this

8  action, Defendants, and each of them, became indebted to Plaintiff in the sum

9  of $30,000.00 goods sold and delivered and/or services rendered to

10  Defendants, and each of them, by Plaintiff at the request of Defendants, and

11  each of them.

12  6. On or about November 21, 2006, was made upon Defendants, and each

13  of them, for the sum due, but Defendants, and each of them, have not paid

14  said sum, or any part thereof, and there is now due, owing and unpaid from

15  Defendants, and each of them, said sum, together with interest thereon at the

16  rate of ten percent (10%) per annum from and after said date.

17  7. Plaintiff is informed and believes and on that basis alleges that there

18  exists, and at all times herein mentioned there existed, a unity of interest

19  between and among the defendants such that any individuality and

20  separateness between them has ceased, that each of said defendants is the

21  alter ego of the other defendants in that each defendant corporation was

22  undercapitalized and was completely controlled, dominated and managed by

23  the other defendants for their own convenience and benefit, and that

24  adherence to the fiction of the separate existence of each defendant would

25  sanction fraud and promote injustice.

26  WHEREFORE, Plaintiff prays for judgment against Defendants, and each of

27  them, as follows:

28  1. For damages in the amount of $30,000.00;

2. For interest on said amount at the rate of ten percent (10%) per annum from November 21, 2006;

3. For costs of suit incurred herein; and

4. For such other and further relief as this Court may deem just and proper.

Dated: June 19, 2009

GLASSBERG, POLLAK & ASSOCIATES

By: _____
HAROLD B. GLASSBERG
Attorneys For Plaintiff

1 | HAROLD B. GLASSBERG, State Bar Number 55669
2 | HAROLD B. AUERBACH, State Bar Number 28004
GLASSBERG, POLLAK & ASSOCIATES
3 | 425 California Street, Suite 850
San Francisco, CA 94104-2193
4 | (415) 291-8320
(415) 291-8111 fax
5 | gpa@glassberg-pollak.com

6 | Attorneys for Plaintiff

**FILED**

San Francisco County Superior Court

JUN 2 9 2009

GORDON PARK-LI, Clerk

BY: _____
Deputy Clerk

7

8

9

10 | SUPERIOR COURT OF THE STATE OF CALIFORNIA

11 | COUNTY OF SAN FRANCISCO

12 | UNLIMITED CIVIL JURISDICTION

13 | MONARCH INOVENTURE CAPITAL,    ) Case No.: CGC-09-489771
LLC, a limited liability company,    )
14 |                                  ) FIRST AMENDED COMPLAINT FOR
                                      ) MONEY DUE ON DISHONORED
15 |           Plaintiff,            ) CHECKS AND FOR STATUTORY
                                      ) DAMAGES
16 |    vs.                          )
                                      )
17 | AMENNUNO MANWA, also known as   ) (Civil Code Section 1719)
MANWA S. AMENNUNO; and DOES 1        )
18 | through 50, inclusive,          )
                                      ) ($30,000.00)
19 |                                  )
           Defendants.               )
20 | _____ )

21 | **FIRST CAUSE OF ACTION**
22 | (Money due against all defendants)

23 |    Plaintiff complains of Defendants, and each of them, and for a First Cause of

24 | Action, alleges as follows:

25 |    1.   That Defendants, DOE 1 through DOE 50, inclusive, are unknown to

26 | Plaintiff, who therefore sues said Defendants by such fictitious names, and

27 | Plaintiff will amend this Complaint to show their true names and capacities

28 | when the same have been ascertained.

FIRST AMENDED COMPLAINT FOR MONEY DUE -

**EXHIBIT**

**2**

2.   Defendant AMENNUNO MANWA, also known as MANWA S. AMENNUNO, is an individual and is a resident of the City and County of San Francisco, California.

3.   Plaintiff MONARCH INOVENTURE CAPITAL, LLC is a limited liability company transacting business in interstate commerce.

4.   Prior to commencement of this action, Plaintiff's Assignor, GLOBAL PAYMENT CHECK SERVICES, INC., assigned, transferred and set over to Plaintiff the hereinafter alleged claim against Defendants, and Plaintiff ever since has been, and now is, the holder and owner thereof.

5.   The claim of indebtedness sued upon herein is not subject to the provisions of Section 1812.10 and Section 2984.4 of the Civil Code for the reason that said indebtedness did not arise from a retail installment contract or under a contract pertaining to the purchase and/or financing of a motor vehicle.

6.   Between November 11, 2006 and November 25, 2006, Defendants made and delivered to Plaintiff's Assignor their eleven separate checks in writing dated on or between those dates, drawn on the US Bank, and payable to the order of Plaintiff's Assignor, in various amounts totaling $30,000.00. Copies of said checks are attached hereto as Exhibits 1 through 11 respectively, and incorporated herein by reference and made a part hereof.

7.   Each of the said checks was thereafter duly presented for payment but each was returned because of insufficient funds.

8.   Due notice of dishonor was thereafter given to said Defendants.

9.   Defendants have not paid any of these checks or any part thereof, and there is now due, owing and unpaid from Defendants to Plaintiff the sum of $30,000.00.

10.  A letter was sent to the Defendants by certified mail on April 28, 2009, advising said Defendants of the dishonor of the checks and further advising

1  that in the event the same were not paid within thirty (30) days, that the

2  provisions of Section 1719 of the Civil Code would be invoked setting forth

3  treble damages for a dishonored check of no less than $100.00 and no more

4  than $1,500.00. A copy of the said letter is attached hereto, labeled Exhibit

5  12, and by reference made a part hereof.

6      11.  Pursuant to the provisions of Civil Code Sec. 1719, Plaintiff is entitled

7  to recover additional damages of $1,500.00 per check, totaling $16,500.00 for

8  the eleven unpaid checks.

9      WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

10      1.  For money in the amount of $30,000.00;

11      2.  For interest on said amount at the rate of ten percent (10%) per

12  annum from November 26, 2006;

13      3.  For statutory damages in the sum of $16,500.00 under Civil Code

14  Sec. 1719;

15      4.  For costs of suit incurred herein; and

16      5.  For such other and further relief as this Court may deem just and

17  proper.

18

19  Dated: June 26, 2009             GLASSBERG, POLLAK & ASSOCIATES

20

21                            By:

22                            HAROLD B. AUERBACH

23                            Attorneys for Plaintiff

24

25

26

27

28

1 | DENIS KLAVDIANOS, State Bar No. 225925
GLASSBERG, POLLAK & ASSOCIATES
2 | 425 California Street, Suite # 850
San Francisco, CA 94104-2193
3 | (415) 291-8320
(415) 291-8111 fax
4 | gpa@glassberg-pollak.com

5 | Attorneys for Plaintiff
Our File No.: 291557
6

7

8 | SUPERIOR COURT OF THE STATE OF CALIFORNIA

9 | COUNTY OF SAN FRANCISCO

10 | UNLIMITED CIVIL JURISDICTION

11 | MONARCH INOVENTURE, etc.,        )  Case No.: CGC-09-489771
                                      )
12 |        Plaintiff,                )
                                      )
13 |                                  )  PLAINTIFF'S POST TRIAL BRIEF
                                      )
14 | vs.                              )
                                      )  TRIAL DATE:  March 1, 2010
15 | AMENNUNO MANWA, et al.,          )
                                      )
16 |        Defendants.               )
                                      )
17 | _____ )

18 |        Plaintiff MONARCH INNOVENTURE CAPITAL, LLC ("Plaintiff") hereby

19 | submits its post-trial brief in this matter.

20 | I.     INTRODUCTION

21 |        The evidence during the March 1, 2010 trial clearly established that

22 | Defendant MAN WA AMMENUNO ("Defendant") intentionally submitted

23 | $30,000.00 of dishonored checks, and that Plaintiff has the right to enforce

24 | such a debt as the assignee of such debt.

25 |

26 |        Defendant's assertion that the "gambling debts" are not enforceable in

27 | California as against public policy is without foundation because (a) the

28 | California Supreme Court in Leo Wong v. Tenneco, (1985) 39 Cal. 3d 126,

EXHIBIT

3

PLAINTIFF'S POST-TRIAL BRIEF                                                  1

135-136 established the standard for evaluating compliance with public policy in this context, and Defendant's circumstances simply do not qualify; (b) there are numerous and ever-increasing forms of gambling that are specifically *permitted* throughout California and it is undeniable that hundreds of thousands of California citizens lawfully participate in gambling each year.

In addition, the documentary evidence and testimony by Plaintiff established that Plaintiff is the lawful assignee of the right to enforce the debt under California Uniform Commercial Code Section 3301(b).

As a result of the foregoing, Plaintiff requests judgment be entered in favor of Plaintiff and against Defendant as follows (a) damages in the amount of $30,000.00; (b) interest on said damages at the rate of ten percent (10%) per annum; (c) $16,500.00 in statutory damages under Civil Code Section 1719; and (d) costs of suit herein.

## II.   LEGAL ARGUMENT

### A.   The $30,000.00 Debt In Dishonored Checks Is Entirely Enforceable In California And Clearly Not Against Public Policy.

In discussing the "public policy" exception to the comity doctrine, the California Supreme Court in <u>Leo Wong v. Tenneco</u>, (1985) 39 Cal. 3d 126, 135-136, stated the following: "[t]he standard, however, is not simply that the law is contrary to our public policy, but that it is so offensive to our public policy as to be **'prejudicial to recognized standards of morality and to the general interests of the citizens.'"**

1    In light of this standard, to assert that gambling debts should not be

2    enforced in California when California law specifically permits numerous

3    forms of gambling in which hundreds of thousands of California citizens

4    participate each year is simply illogical and certainly does not meet the

5    standard articulated by the California Supreme Court in <u>Leo Wong v. Tenneco</u>.

6

7    For example, California specifically authorizes the operation of "card

8    rooms", e.g., poker  (Business & Professions Code §§ 19800-19985); Nevada-

9    style gaming Casinos on Indian tribes within the borders of California (Article

10   IV. Sec. 9 of The California Constitution); the state lottery; gambling on horse

11   racing; and internet gambling.

12

13   Consistent with the Supreme Court's holding in <u>Leo Wong v. Tenneco,</u>

14   <u>supra.</u>, various California appellate decisions have specifically recognized the

15   trend toward California's allowance of numerous types of gambling and have

16   rejected claims that any public policy is violated. For example, in <u>Crockford's</u>

17   <u>Club Limited v. Smail Si-Ahmed</u> (1988) 203 Cal. App.3d 1402, 1406, the court

18   stated the following "[i]n view of the expanded acceptance of gambling in this

19   state as manifested by the introduction of the California lottery and other

20   innovations...[citations omitted], **it cannot seriously be maintained** that

21   enforcement of said judgment 'is so antagonistic to California public policy

22   interests as to preclude the extension of comity ...'" <u>See also</u> <u>Nevcal</u>

23   <u>Enterprises, Inc. v. Cal-Neva Lodge Inc.</u>, (1961) 194 Cal.App.2d 177,180

24   (where the court stated that "Californians cannot afford to be pious about this

25   matter of gambling").

**B.    Plaintiff Is The Assignee Of The Debt Owed By Defendant And Is Able To Enforce The Debt.**

California Uniform Commercial Code Section 3301(b) provides as follows: "Persons entitled to enforce and instrument means...(b) a nonholder in possession of the instrument **who has the rights of a holder.**"

Plaintiff presented testimony by its witness that the Plaintiff was the assignee of the right to enforce the debt owed by Defendant. Specifically, Plaintiff presented the "Agreement For The Sale And Assignment Of Commercial Paper" and the "Check Guarantee Agreement" which establishes the assignment of the debt owed by Defendant.

**C.    Plaintiff Is Entitled To Statutory Damages Pursuant To Civil Code Section 1719(2) For The Bounced Checks.**

Civil Code Section 1719(2) provides as follows:

Notwithstanding any penal sanctions that may apply, any person who passes a check on insufficient funds shall be liable to the payee for damages equal to treble the amount of the check if a written demand for payment is mailed by certified mail to the person who had passed a check on insufficient funds and the written demand informs this person of (A) the provisions of this section, (B) the amount of the check, and (C) the amount of the service charge payable to the payee. The person who had passed a check on insufficient funds shall have 30 days from the date the written demand was mailed to pay the amount of the check, the amount of the service charge payable to the payee, and the costs to mail the written demand for payment. **If this person fails to pay in full the amount of the check, the service charge payable to the payee, and the costs to mail the written demand within this period, this person shall then be liable instead for the amount of the check, minus any partial payments made toward the amount of the check or the service charge within 30 days of the written demand, and damages equal to treble that amount, which shall not be less than one hundred dollars ($100) nor more than one thousand five hundred dollars ($1,500).** When a person becomes liable for treble damages for a check that is the subject of a written demand, that person shall no longer be liable for any

4

service charge for that check and any costs to mail the written demand.

Defendant specifically admitted during the trial that they passed $30,000.00 of dishonored checks, and that they received the proper notice as outlined in Section 1719(2). Defendant also admitted that they did not later pay the dishonored checks.

In the Complaint, at Paragraph 11, Plaintiff alleged that Plaintiff is entitled to recover additional damages of $1,500.00 per check, totaling $16,500.00 for the eleven unpaid checks. As a result, Plaintiff requests an additional $16,500.00 for the eleven unpaid checks.

## III.    CONCLUSION

As a result of the foregoing, Plaintiff requests judgment be entered in favor of Plaintiff and against Defendant as follows: (a) damages in the amount of $30,000.00; (b) interest on said damages at the rate of ten percent (10%) per annum; (c) $16,500.00 in statutory damages under Civil Code Section 1719; and (d) costs of suit herein.

DATED: March 15, 2010                    GLASSBERG, POLLAK & ASSOCIATES

By:_____

                                         **DENIS KLAVDIANOS**
                                         **Attorneys for Plaintiff**

ENDORSED
F I L E D
San Francisco County Superior Court

APR – 8 2010

CLERK OF THE COURT
BY: MARJORIE MANZELLA
Deputy Clerk

**SUPERIOR COURT OF CALIFORNIA**

**County of San Francisco**

| | |
|---|---|
| MONARCH INOVENTURE CAPITAL, LLC,<br><br>                  Plaintiff,<br><br>vs.<br><br>MAN WA AMENNUNO,<br><br>                  Defendant. | Case No.: CGC-09-489771<br><br>STATEMENT OF DECISION FOLLOWING TRIAL TO THE COURT AND JUDGMENT |

This case came on for trial before me on March 1, 2010. Plaintiff Monarch Inoventure

Capital, LLC ("Monarch") was present and represented by Denis Klavdianos of Glassberg,

Pollak & Associates. Defendant Man Wa Amennuno ("Amennuno") was present and

represented at trial by Raeon Roulston, of Consumer Law Center, Inc. Defendant had the

assistance of a Cantonese language interpreter. The trial took place over the course of

approximately two hours and was completed in less than one day. Post trial briefs were filed as

**EXHIBIT**

**4**

MONARCH INOVENTURE CAPITAL, LLC v. MAN WA AMENNUNO – CGC-09-489771 – STATEMENT
OF DECISION FOLLOWING TRIAL TO THE COURT AND JUDGMENT

1

1   directed on March 15, 2010 and March 29, 2010.  Upon filing of the last brief, this matter was
submitted.  Neither side requested a statement of decision.

2       The following facts are undisputed.  Between approximately November 12 through
3   November 26, 2006, Defendant signed 11 personal checks totaling $30,000 payable to Thunder
4   Valley Casino (the "Casino"), located in California.  (Exs. 3 through 13.)  Defendant testified
5   that after she signed each check, she cashed it at the Casino for cash, and then took the cash to
6   the Casino gambling table where she spent all of the cash on gambling chips.  She eventually lost
7   all of her gambling chips.  Defendant knew when she wrote the checks that she did not have
8   sufficient funds to cover the checks.  She intended to pay the money to support the checks out of
9   her gambling winnings, but as it turned out, there were none.  Defendant has not made good on
10  the $30,000 to any party.

11      Plaintiff contends that it is the assignee of the $30,000 debt, having bought from Global
12  Payment Check Services ("Global") the rights to enforce the debt.  Global is a check guarantee
13  company that pays the face value of the check.  By this action, Plaintiff seeks to enforce the debt.

14      Defendant raises a complete defense that her $30,000 gambling debts are unenforceable
15  under California law, relying primarily on *Metropolitan Credit Services of Sacramento v. Sadri*
16  (1993) 15 Cal. App. 4th 1821, 1823 ("*Metropolitan*").  As set forth below, I find that based on
17  the evidence before me in this case, Defendant is correct.

18      In *Metropolitan*, a California resident wrote personal checks and memoranda of
19  indebtedness to a Nevada casino over a two-day period totaling over $22,000 for which he
20  received gambling chips.  The defendant subsequently lost all of the chips playing baccarat at the
21  casino, and stopped payment on the checks and memoranda.  The casino sold the debt to
22  Metropolitan, who then sued the defendant on the debt in a Superior Court in California.  The
23  Court of Appeal in *Metropolitan* held that a "Nevada cause of action to enforce gambling debts

24

25

2

MONARCH INOVENTURE CAPITAL, LLC v. MAN WA AMENNUNO – CGC-09-489771 – STATEMENT
OF DECISION FOLLOWING TRIAL TO THE COURT AND JUDGMENT

1  incurred at a casino for the purpose of providing the debtor with funds for gambling violates

1  California's public policy against gambling on credit and thus is unenforceable in this state."

2  *Metropolitan*, 15 Cal. App. 4th at 1823. In reaching its conclusion, the court cited to language in

3  *Hamilton v. Abadjian* (1947) 30 Cal. 2d 49, 52: "The owner of a gambling house who honors a

4  check for the purpose of providing a prospective customer with funds with which to gamble and

5  who then participates in the transaction thus promoted by his act cannot recover on the check."

6    In noting that the "*Hamilton* rule" was "on all fours" with the facts of *Metropolitan*, the

7  *Metropolitan* court reasoned that "if *Hamilton* still reflects the public policy of the State of

8  California, it precludes judicial enforcement of [defendant's] gambling debts in California state

9  courts." *Metropolitan*, 15 Cal. App. 4th at 1827.

10    The *Metropolitan* court undertook an analysis of California case law on this issue since

11  *Hamilton*, as well as taking into account the passage of the California State Lottery Act of 1984

12  by a voter passed initiative. The Court concluded that there is a "critical distinction between

13  public acceptance of gambling itself and California's deep-rooted policy against enforcement of

14  gambling debts—that is, gambling on *credit*. While the public policy against the former has

15  been substantially eroded, the public policy against the latter has not. [¶] This is because

16  California's rule against enforcing gambling debts has never depended upon the criminalization

17  of gambling itself." *Id*. at 1828. (emphasis in original).

18    The Court continued that "it matters little that gambling itself has become more accepted

19  in California. The cornerstone of the *Hamilton* rule against enforcement of gaming house debts

20  is not simply that the game played is unlawful, but that the judiciary should not encourage

21  gambling on *credit* by enforcing gambling debts, whether the game is lawful or not." *Id*. at 1829

22  (emphasis in original).

23

24

25

3

1    The Court concluded: "California's strong public policy against enforcement of

2 gambling debts remains unaffected by increased public tolerance of gambling itself or by the

3 limited legalization of certain forms of gambling in this state. That public policy is so

4 fundamental and deep-rooted as to justify our refusal to enforce a sister state cause of action."

*Id.* at 1832.

5    In reaching its decision, Metropolitan distinguished and declined to follow *Crockford's*

6 *Club Limited v. Smail Si-Ahmed* (1988) 203 Cal. App. 3d 1402, 1406. In that case, decided five

7 years before *Metropolitan*, the court enforced an English judgment against a California resident

8 for a gambling debt arising from a casino in England, relying heavily on the fact that gambling is

9 legal in England, and concluding that "[i]n view of the expanded acceptance of gambling in this

10 state as manifested by the introduction of the California lottery and other innovations...it cannot

11 be seriously maintained that enforcement of said judgment 'is so antagonistic to California

12 public policy interests as to preclude the extension of comity in the present case.'" *Id.* at 1406,

13 citing *Wong v. Tenneco, Inc.* (1985) 39 Cal. 3d 126, 136. As the *Metropolitan* court noted,

14 *Crockford's* "does not specifically address whether the enforcement of gambling debts is still

15 against public policy in California," and does not discuss *Hamilton* or any of the California cases

16 on this issue. *Metropolitan, supra*, 15 Cal. App. 4th at 1828. More fundamentally, the court in

17 *Metropolitan* criticized the *Crockford's* decision for, as noted above "fail[ing] to draw the critical

18 distinction between public acceptance of gambling itself and California's deep-rooted policy

19 against enforcement of gambling debts—that is, gambling on credit." *Id.*

20    Although the issue in *Metropolitan* was in the context of whether a gambling debt that

21 was the subject of a sister state cause of action could be enforced in California, the result should

22 be the same in determining whether a California cause of action can be brought in California to

23 enforce a gambling debt. Further, *Metropolitan* and *Hamilton* continue to be cited for the

24

25    4

proposition that "California's long-standing public policy regarding gambling is a broad, strong

1 policy against judicial resolution of civil claims arising out of gambling contracts or

2 transactions," and, most pertinent here, as it applies to "actions to enforce gambling debts." *See*

3 *Kelly v. First Astri Corporation* (1999) 72 Cal. App. 4th 462, 489. *See also* 1 Witkin, Summary

4 of California Law, *Contracts* (10th ed. 2005 & Supp. 2009), § 426, p. 467-68.

5      Plaintiff contends that the $30,000 gambling debt is enforceable in California,

6 notwithstanding the cases cited above, relying on *Wong v. Tenneco, Inc.* (1985) 39 Cal. 3d 126,

7 135-36. That case, however, concerned whether a produce grower could "enlist the aid of

8 California courts to recover damages allegedly suffered as a result of losing his illegal farming

9 operations" in Mexico. *Id.* at 135. In *Wong*, the produce grower was seeking to recover

10 damages that were "unrecoverable under Mexican law," and the lawsuit filed in California was

11 characterized by our Supreme Court as a "flagrant effort to circumvent Mexican law." *Id.*

12 Applying the law of comity—not at issue in the case before me—the Supreme Court applied the

13 substantive law of Mexico to the cause of action which arose there. This had the effect of

14 denying the parties any relief. Plaintiff cites to language in *Wong* regarding the "public policy"

15 exception to the comity doctrine ("[t]he standard, however, is not simply that the law is contrary

16 to our public policy, but that it is so offensive to our public policy as to be 'prejudicial to

17 recognized standards of morality and to the general interests of the citizens.'"). *Id.* at 135-36.

18 However, Wong does not address whether the gambling debts in the case before me are

19 enforceable.

20      Based on the foregoing precedents, and the evidence presented at trial, I conclude that the

21 debt is unenforceable. As in *Metropolitan*, it represents a gambling debt incurred at a casino for

22 the purpose of providing the debtor with funds with which to gamble at the casino. Having

23

24

25
MONARCH INOVENTURE CAPITAL, LLC v. MAN WA AMENNUNO – CGC-09-489771 – STATEMENT
OF DECISION FOLLOWING TRIAL TO THE COURT AND JUDGMENT

1    reached this conclusion, I do not address Defendant's argument that Plaintiff is not the lawful
     assignee of the right to enforce the debt.

2         Upon the foregoing, the Court concludes that Plaintiff Monarch Inoventure Capital, LLC
3    shall take nothing on its First Amended Complaint and that Defendant Man Wa Ammenuno is
4    entitled to judgment against Plaintiff.

5         THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that judgment is
6    entered in favor of Defendant Man Wa Ammenuno, that Plaintiff Monarch Inoventure Capital,
7    LLC take nothing from Defendant, and that Defendant be awarded costs to be determined
8    according to the applicable law.

9

10
     Dated:   April 8, 2010
11                                                            Marla J. Miller
                                                          Judge of the Superior Court
12

13

14

15

16

17

18

19

20

21

22

23

24
                                                                                              6
25   MONARCH INOVENTURE CAPITAL, LLC v. MAN WA AMENNUNO – CGC-09-489771 – STATEMENT
     OF DECISION FOLLOWING TRIAL TO THE COURT AND JUDGMENT

## SUPERIOR COURT OF CALIFORNIA
### County of San Francisco

MONARCH INOVENTURE CAPITAL, LLC,

                              Plaintiff(s),

                vs.

MAN WA AMENNUNO, et al.,

                              Defendant(s).

Case Number: CGC-09-489771

**CERTIFICATE OF MAILING**
(CCP 1013a (4) )

I, MARJORIE L. MANZELLA, a Deputy Clerk of the Superior Court of the County of San Francisco, certify that I am not a party to the within action.

On APRIL 8, 2010, I served the attached **STATEMENT OF DECISION FOLLOWING TRIAL TO COURT AND JUDGMENT**, filed on April 8, 2010, by placing a copy thereof in a sealed envelope, addressed as follows:

DENIS KLAVDIANOS, Esq.
Glassberg Pollak & Associates
425 California Street, Suite 850
San Francisco, CA 94104

RAEON R. ROULSTON, Esq.
FRED W. SCHWINN, Esq.
Consumer Law Center, Inc.
12 South First Street, Suite 1014
San Jose, CA 95113

and, I then placed the sealed envelopes in the outgoing mail at 400 McAllister Street, San Francisco, CA. 94102 on the date indicated above for collection, attachment of required prepaid postage, and mailing on that date following standard court practices.

Dated: APRIL 8, 2010

Clerk of the Court
By: _____
       Marjorie L. Manzella, Deputy Clerk